IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-43548-TLS |
| | ) | (Lead Case) |
| EULEN C. WHITTEN, JR. and | ) | CH. 12 |
| DAWN M. WHITTEN, | ) | |
| | ) | |
| Debtors. | ) | |
| IN THE MATTER OF: | ) | CASE NO. BK10-43545-TLS |
| | ) | (Member Case) |
| WHITTEN RANCH, INC., | ) | CH. 12 |
| | ) | |
| Debtor. | ) | |

# ORDER

Trial was held in Lincoln, Nebraska, on August 30, 2012, on confirmation of Debtors' second amended Chapter 12 plan (Fil. #179), with objections filed by the Chapter 12 trustee (Fil. #180) and creditor Great Western Bank (Fil. #181). John C. Hahn appeared for Debtors, James A. Overcash appeared as the Chapter 12 trustee, and Shawn P. Dontigney appeared for Great Western Bank. Documentary evidence and live testimony were received. Closing argument briefs were submitted to the court and the matter was taken under advisement.

Debtors filed their Chapter 12 petition on November 24, 2010. Great Western Bank filed its proof of claim as a fully secured creditor in the amount of $567,730.10 as of April 13, 2011. The balance due to the bank is currently approximately $585,000.00. Since filing, Debtors and Great Western Bank had been negotiating Great Western Bank's plan treatment, but those efforts were unsuccessful. On May 14, 2012, Debtors filed their second amended Chapter 12 plan to which Great Western Bank and the Chapter 12 trustee filed objections.

The evidence introduced at trial revealed the following undisputed facts:

1. Debtors' business operations can be categorized as follows:

    (i) the sale of hay grown on land owned by Debtors;

    (ii) the purchase of hay from third parties and the resale of that hay to others;

    (iii) the development, breeding, and sale of horses; and

    (iv) income from the chiropractic business of Dr. Whitten.

2. The loans at issue were made by TierOne Bank, and were subsequently assigned to Great Western Bank. These loans can be summarized as follows:

| Date of Note | Maturity Date | Original Amount | Interest Rate | Amortized | Payment |
|---|---|---|---|---|---|
| 02/27/06 | 12/01/10 | 108,737.32 | 7.75 | Annual | 26,658.25 |
| 02/27/06 | 12/01/10 | 152,857.70 | 6.50 | Annual | 7,643.00 |
| 05/05/06 | 12/01/10 | 31,500.00 | 8.25 | Annual | 7,705.14 |
| 10/31/07 | 11/01/12 | 126,457.00 | 7.50 | Monthly | 2,540.96 |
| 07/01/08 | 07/01/13 | 31,500.00 | 5.50 | Monthly | 602.89 |
| 04/09/09 | 03/09/10 | 350,000.00 | 5.25 | Quarterly | interest only |

3. Great Western Bank's loans are secured by a first lien deed of trust encumbering Debtors' real estate valued at $435,000.00 and a lien on virtually all of Debtors' personal property, including inventory, accounts, equipment, crops, livestock, and fixtures. According to an appraisal obtained by Great Western Bank dated November 4, 2011, the value of the personal property is $471,700.00. Debtors dispute that valuation as to several of the items, and assert that the total value is $219,985.00. In either case, there is a senior lien on the John Deere tractors in the approximate amount of $120,000.00.

4. Based on Debtors' values, they believe Great Western Bank is somewhat under-secured, but are willing to treat them as "fully secured," but not over-secured. Great Western Bank, of course, feels it is over-secured based upon its appraisals.

5. In addition to the income from Debtors' hay operation, Dr. Whitten runs Whitten Chiropractic and his income from that entity provides for the payment of their personal expenses.

Debtors' second amended Chapter 12 plan proposes to combine the obligations owed to Great Western Bank into one claim to be amortized over a 25-year period at 5.25%, with a balloon payment due at the end of 10 years. Debtors propose for annual payments to commence April 1, 2013. Debtors have included a clause in the plan to allow Great Western Bank to obtain relief from the automatic bankruptcy stay if Debtors default and fail to cure the same within 30 days after notice. Great Western Bank has objected to the plan on several grounds, but in its closing brief, summarized the primary issues as (i) whether the bank is an "over secured" creditor and therefore entitled to payment of its attorney fees as part of its secured claim under § 506(b); (ii) whether the repayment terms under the proposed plan are reasonable; and (iii) whether the plan is feasible. The Chapter 12 trustee has also objected, asserting that the calculations of disposable income appear to be inaccurate.

*Secured Status*

The parties agree that the value of the real estate collateral is $435,000.00. Great Western Bank obtained an appraisal of its personal property collateral dated November 4, 2011, indicating a

value of $471,700.00, less the senior debt of $120,000.00 owed to John Deere, for a net value of $351,700.00. Thus, Great Western Bank values its collateral package at $786,700.00, which means it is well over-secured.

Debtors believe the personal property is worth $219,985.00 (due primarily to much lower values placed on the John Deere equipment and a Volvo truck), or a net of $99,985.00 after deducting for the senior lien. Thus, Debtors believe the bank is under-secured. As evidence, Debtors submit their own estimates of value as well as some handwritten valuations prepared by a third party for the John Deere equipment and the Volvo truck. The valuations appear to be prepared by equipment dealers or auctioneers. In any event, Debtors do not believe the bank is entitled to include its attorney fees as part of its allowed claim since it is not an over-secured creditor.

After review, I find that the appraisal presented by Great Western Bank is the most credible evidence of value. It was prepared by a certified personal property appraiser and was based on the market value of the property. It is unclear what qualifications are held by the individuals who prepared the valuations for Debtors and it also appears those valuations are based, at least in part, on trade-in values. As a result, I find that Great Western Bank is an over-secured creditor entitled to its attorney fees and costs pursuant to § 506(b). *In re Lichty*, 251 B.R. 76, 78 (Bankr. D. Neb. 2000) ("Under § 506(b), a secured creditor is allowed attorney fees if the creditor is over secured, and the allowed secured claim plus the attorney fees, costs, and interest are less than the value of the property which secures the indebtedness.").

*Reasonableness of Repayment Terms*

Generally, a plan must propose to pay claims in no more than five years, 11 U.S.C. § 1222(c), but secured claims may be paid over longer terms if certain requirements are met. Section 1225(a)(5) sets forth those requirements:

> [T]he court shall confirm a plan if —
> . . .
> (5) with respect to each allowed secured claim provided for by the plan —
> (A) the holder of such claim has accepted the plan;
> (B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
> (C) the debtor surrenders the property securing such claim to such holder[.]

Because Great Western Bank has not accepted the plan and Debtors are not proposing to surrender the collateral, the issue is whether the plan's proposed treatment of the claims provides for payment of the claims' present values. That entails an evaluation of the appropriate discount factor

to be applied to the stream of payments, as well as an assessment of the repayment period. The Supreme Court case of *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), adopted the formula approach that is set forth in Local Rule 3023-1. Factors for a court to consider when deciding whether the formula rate is sufficient include the estate's circumstances, the nature of the security, and the duration and feasibility of the plan. *Till*, 541 U.S. at 479.

While the creditor in the present case is not excited about the current global financial situation and the resulting low prime rate, the formula interest rate as proposed by Debtors is appropriate under *Till*. The present interest rate climate is not under Debtors' control and they should not be made to alleviate any more of Great Western Bank's risk than *Till* requires. Generally, interest rates are cyclical, sometimes to the borrower's advantage and sometimes to the lender's advantage. Currently, the rates are in Debtors' favor. That simply is how it is and the rate proposed under the plan is appropriate.

In addition to the interest rate, Great Western Bank questions the duration of the amortization and the repayment terms. Debtors propose a 25-year amortization with payments to commence in April 2013, with a balloon payment in year 10. When contemplating a plan's repayment period, the court may consider the length of the underlying note and the creditor's customary repayment periods for similar loans. *In re Torelli*, 338 B.R. 390, 397 (Bankr. E.D. Ark. 2006). The debtor in *Torelli* proposed repayment of a five-year, 7.75% note over 20 years at 5%. As that interest rate was lower than the minimum required by *Till*, the court adjusted it. The court also ruled that the 20-year term did not withstand scrutiny in light of § 1225(a)(5). Specifically, the court said the lender would not receive "the benefit of its bargain by being forced into a new loan of substantially longer term than originally contemplated by the parties." *Torelli*, 338 B.R. at 397. That is the same argument Great Western Bank makes in this case.

All of the loans in the present case were short-term loans. Great Western Bank did not anticipate a 25-year repayment schedule when it approved the loans and they should not be compelled to accept such terms. It may be appropriate to impose longer repayment terms (with periodic interest rate adjustments) on a loan secured solely by real estate since real estate has historically held its value or appreciated in value. *In re Bryant*, 439 B.R. 724, 744 (Bankr. E.D. Ark. 2010) (collecting cases); *In re Mulnix*, 54 B.R. 481, 484 (Bankr. N.D. Iowa 1985). Personal property, on the other hand, rapidly depreciates in value. Thus, since personal property makes up a substantial portion of the collateral package, a much shorter amortization would be appropriate under the circumstances.

*Feasibility*

To put it mildly, Debtors' financial projections have been a moving target throughout this case, changing up to the date of trial. The financial projections are unreliable for a variety of reasons. For example, Debtors do not seem to take into account the true costs associated with their proposed horse operation. Debtors believe that using the hay they raise to feed the horses means that there is no cost to feeding the horses. That, of course, overlooks the loss of income from the lost hay sales. Other costs, such as veterinary and training expenses, also appear to be well understated. Finally,

Debtors' plan to begin training horses seems unrealistic considering the lack of any history of doing so, the time it would take, and the medical issues to which Mrs. Whitten testified. The projections regarding the purchase of hay and the resale of that hay to others also appears to be based on unrealistic projections. While Debtors may have had success at one time in purchasing hay in North Dakota, picking it up, transporting it and reselling it for a 100% profit, that seems to be more of an anomaly rather than a valid projection. The transportation costs also appear to be quite understated.

Great Western Bank's feasibility objection is well-taken, at least with respect to the plan as proposed. Further, it does not appear that Debtors have responded to the Chapter 12 trustee's objections.

IT IS, THEREFORE, ORDERED that the objections of Great Western Bank (Fil. #181) and the Chapter 12 trustee (Fil. #180) are sustained. Debtors shall have until October 31, 2012, to file an amended plan.

DATED: October 10, 2012.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *John C. Hahn
    James A. Overcash
    Shawn P. Dontigney
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.